IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| LAMEKA D. BROWN O/B/O<br>N.B., III, a minor child,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | Case No. 07-00377-CV-W-NKL-SSA |

**ORDER**

Plaintiff Lameka D. Brown, on behalf of her minor child, Norman, challenges the Social Security Commissioner's denial of Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. Specifically, Lameka D. Brown asserts that the record does not support the Administrative Law Judge's ("ALJ") finding that Norman Brown was not under a disability. [Doc. # 5]. Having jurisdiction under 42 U.S.C. § 405(g), this Court finds that the Commissioner's decision is supported by substantial evidence.

**I.   Factual Background**

The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1] On August 15, 2002, Lameka D. Brown filed an application for Supplemental Security Income benefits on behalf of her son, Norman

---

[1] Portions of the parties' briefs are adopted without quotation designated.

1

Brown, III ("Norman"), date of birth, June 20, 1991, alleging an onset date of disability of March 27, 2001. (Tr. 88-92). She alleged disability due to a speech and language disorder. (Tr. 117). At the time Lameka Brown filed her application, Norman was 13 years of age and was in the 8th grade, attending special education classes for speech and language therapy. (Tr. 381-382).

On August 29, 2002, the state agency psychologist specifically found that Norman had a marked limitation in the domain of acquiring and using information. (Tr. 281). In 2003, intelligence tests showed Norman had a verbal IQ of 81, a performance IQ of 81 and a full scale IQ of 79. (Tr. 17).

Norman has been treated at Swope Health Services for ADHD and generalized anxiety disorder since June 2004. (Tr. 17). Norman "has a counselor that works on him or with him on a frequent basis. He sees a therapist twice a week. He does have a case manager, but as far as therapy, he goes to therapy and sees another lady probably like biweekly." (Tr. 333-334). Norman's social worker indicated that he had difficulty sustaining attention, focusing on direct instructions, organizing tasks and managing his worry. (Tr. 17).

On July 9, 2004, James True, M.D., noted that Norman showed "strange and bizarre behaviors including injuring himself and animals, and starting fires."[2] True diagnosed Norman with schizoaffective disorder and assessed a Global Assessment of Functioning of 41." (Tr. 18). His mood appeared eurythmic and somewhat anxious. Dr. True noted that

---

[2][Norman] needs assistance with retention of word concepts, reading comprehension and written language. (Tr. 305). He stored manure in his room and added garbage to it to see it ferment. He talks about building a microwave car. He states that he wants to grow up to be a mad scientist. *Id.*

2

Norman's academic records "indicated Norman has significant problems recalling facts and comprehending what he has read. He has problems using punctuation, capitalization and grammatical construction correctly . . . . [Norman's] communication indicated the student did not pass the District's Speech and Language Screening and additional evaluation was determined to be needed. Language skills are not functional as compared to peers in the same age group. Speech/Language skills are not adequate for academic needs. Diagnostic Conclusion indicates initial evidence of Language Disorder as the primary handicapping condition. The student's language disorder adversely affects his/her school functioning." (Tr. 149-156). True then recommended immediate attention to Norman's "psychosis." *Id*. at 17-18.

The ALJ first held hearings on Lameka Brown's application on August 24, 2004. At that hearing, when asked by the ALJ why she thought her son was disabled, Lameka Brown likened the severity of her son's impairments to autism because of how often Norman saw medical professionals and underperformed in everyday tasks. (Tr. 385). According to Lameka Brown, Norman is forgetful and unable to "stick to, you know, a certain task that [Mrs. Brown] ask[s] him to perform." (Tr. 386). Norman has friends slightly younger than he is. He likes science but admits that he needs a lot of help with homework. (Tr. 397). According to Lameka Brown, Norman gets D's and F's in all his classes.

At the original hearing, the ALJ took testimony of the court's medical expert, Richard Kaspar, Ph.D. ("Kaspar"), by telephone. (Tr. 398). Dr. Kaspar is a clinical psychologist. *Id*. Kaspar testified that Norman had impairments of, "history of ADHD, Attention Deficit

3

Hyperactive Disorder. Under children's mental category 112.06, he's got an overanxious disorder of childhood, an anxiety related disorder. Under children's mental category 112.02, he has a learning disorder, a learning disorder, NOS, not otherwise specified. Other - - at, at least history of other language delays, developmental disorders, some suggestion also of borderline intellectual functioning. And in - - under mental category 112.03, a recent diagnosis of a [schizo] affective disorder." (Tr. 18, 399-400).

After reviewing True's diagnosis, Kaspar recommended updating treatment records and obtaining a psychological consultative examination which was performed on September 23, 2004, by Jamie Prestage, M.D. ("Prestage"). (Tr. 18, 327, 403-407). Prestage is a licensed psychologist. During his evaluation of Norman, he found Norman somewhat anxious but he quickly settled down. "He was well oriented and there was no evidence of thought disorder, affective disorder or behavior disorder . . . . Within the school setting Norman reportedly functioned well, but exhibits learning deficits in reading, math and written expression." (Tr. 320). Psychologist Prestage's diagnostic impression was Attention Deficit Hyperactivity Disorder (By History), Generalized Anxiety Disorder (By History), and Learning Disorder NOS. (Tr. 320).

While Norman's school records show significant problems with acquiring and using information, they do not indicate a significant problem with concentration. (Tr. 148-256). For example, when Swope Parkway Health Center sent out questionnaires to Norman's teachers, his teachers identified "just a little" problem with distractability. (Tr. 242-256). He

4

consistently was described as a compliant child who was able to interact appropriately with his teachers and classmates.

At a subsequent hearing, after Prestage's report was received by the ALJ and reviewed by Kaspar, Kaspar testified that the True report and the Prestage report were in conflict. The reports "didn't sound like the same young man" which was surprising given that they were based on observations two months apart. (Tr. 328).

The last hearing regarding Norman's application was held on June 6, 2005. (Tr. 350-361). Although the ALJ noted that "the law absolutely requires that we give greater weight to treatment records than we do on time consultative evaluations," the ALJ accorded greater weight to Prestage's diagnosis because there were few treatment notes from True; Norman was not taking anti-psychotic medications; and Norman's school records showed that he did not have behavioral problems. (Tr. 18).

Based on diagnoses of borderline intellectual functioning and ADHD, Kaspar concluded that Norman did not meet the requirements for a listed impairment. (Tr. 356). The ALJ also concluded that Norman's impairments are not of a severity which medically meet or equal the severity of any impairment listed in Part B of Appendix 1 to Subpart P, 20 CFR Part 404 ("Listing of Impairments"). "Neither are claimant's impairments functionally equivalent in severity to any listed impairment . . . [Norman] does not have "extreme" or "marked" limitations in any functional domains." (Tr. 21).

On June 21, 2006, the Administrative Law Judge issued an Unfavorable Decision on Lameka Brown's claim. (Tr. 13-22). Lameka Brown filed a timely Request with the Appeals

5

Council of the Social Security Administration to review the decision of the Administrative Law Judge. On May 14, 2007, the Appeals Council denied her appeal. (Tr. 8-10).

## II. Discussion

In reviewing the Commissioner's denial of benefits, this Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choices." *See Casey v. Astrue*, No. 06-3841, 2007 WL 2873647, at *1 (8th Cir. Oct. 4, 2007). "An ALJ's decision is not outside the 'zone of choice' simply because we might have reached a different conclusion had we been the initial finder of fact." *Id.* (quoting *Nicola*, 480 F.3d at 886).

An individual under age eighteen will be considered disabled if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C)(I). The ALJ must apply the following sequential evaluation to determine whether an individual not yet 18 has a disability (or combination of disabilities) thereby entitling the individual to SSI benefits:

1. Whether or not the claimant is engaged in substantial gainful activity;

2. Whether or not a claimant has a severe impairment within the meaning of the Social Security Act-that is whether or not the impairment "causes more than a minimal limitation in one's ability to function in an age appropriated manner";

3. Whether or not the severity of a claimant's impairment(s) meet or medically or functionally equals the requirements listed in the Listing of Impairments in

Appendix 1, Subpart P of the Social Security Act;

4. And finally, pursuant to the following four-step analysis, whether an impairment of a combination of impairments is functionally equivalent to a listed impairment. *See* 20 CFR 416. 926a (d) ("Whether there are disabling limitations in broad areas of functioning, such as social functioning, motor functioning, and personal functioning.").

The ALJ must consider not only what a child cannot do, but also what a child has difficulty doing, needs help doing, or is restricted from doing because of the impairments. 65 Fed Reg. 54, 756. The ALJ must consider all the limitations of a child, "even when the child has some ability to do an activity." 65 Fed. Reg. 54, 756.

There are six domains the ALJ must assess for a child's limitation. 20 CFR 926a (b)(1). If a child suffers from an "extreme" limitation under one domain, or a "marked" limitation under two domains, the child has a combination of impairments functionally equivalent to a listed impairment. The domains are:

(i) Acquiring and using information;

(ii) Attending and completing tasks;

(iii) Interacting and relating with others;

(iv) Moving about and manipulating objects;

(v) Caring for yourself; and

(vi) Health and physical well being. *Id*.

### A. Norman's Ability to Acquire and Use Information

Lameka Brown claims that the ALJ erred by finding that Norman did not have a marked limitation in domain (i) acquiring and using information; and domain (ii) attending

and completing tasks. (Tr. 19-21).[3] The State Agency Psychologist, Janet L. Raps, found that Norman's limitation as to acquiring and using information was "Marked" based upon the fact that "[Norman] has a language disorder" and "has difficulty with verbal and written instructions." (Tr. 281). A finding made by a State agency psychologist is "expert opinion evidence" which the ALJ may not ignore; the ALJ must also explain the weight given to the State agency psychologist's opinion. SSR 96-6p.

The ALJ accorded Raps' evaluation "some weight" because the opinions were generally consistent with other medical evidence. (Tr. 18). However, the ALJ rejected her finding that Norman had a marked limitation in acquiring and using information. Instead, he relied on Prestage's report which stated that Norman's speech "was intelligible, although some articulation errors were noted." The ALJ also noted that Norman's speech therapy was proving "somewhat effective." (Tr. 20). Finally, Kaspar, the ALJ's consulting psychologist, concluded that Norman "has less than marked limitation in acquiring and using information." *Id*.

Considering the evidence in the record as a whole, the ALJ erred in rejecting the conclusion by Raps that Norman had a marked limitation in acquiring and using information. Virtually every teacher indicated that Norman was below his peers academically and that he had consistent problems with remembering information and instructions. While he was motivated to learn, he often could not perform adequately. Because Kaspar had never examined Norman, the ALJ could not reasonably rely on his opinion in the face of the

---

[3]The ALJ found no impairment in any of the other domains and Lameka Brown does not challenge those findings.

overwhelming evidence which contradicted it. While Prestage's report indicated that Norman's speech was intelligible, Prestage also diagnosed Norman with Learning Disability NOS. The substantial weight of the evidence, therefore, cannot support the ALJ's conclusion that Norman did not have a marked limitation in the domain of acquiring and using information.

### B. Norman's Ability to Attend and Complete Tasks

The regulations provide six nonexclusive examples of limited functioning in this domain. 20 CFR 416. 926a(h)(3). These examples contain a disclaimer that these examples do not necessarily describe a "marked" or "extreme" limitation. A child may have a limitation in the domain of "attending and completing tasks" if he: (1) is easily startled, distracted, or over reactive to sounds, sights, movements, or touch; (2) is slow to focus on, or fails to complete activities of interest; (3) repeatedly becomes sidetracked from activities and frequently interrupts others; (4) is easily frustrated and gives up on tasks; (5) requires extra supervision to stay engaged in an activity. 20 CFR 416. 926a(h)(3).

There is substantial evidence to support the ALJ's finding that Norman's limitation in attending and completing tasks is "less than marked." While all examining physicians agreed with Norman's diagnosis of ADHD, the ALJ noted that Norman had responded well to Lexapro for anxiety and depression and that he had recently started Adderall treatment for his ADHD. (Tr. 20, 319). More importantly, Norman's school records do not show a consistent problem with concentration and distractability. (Tr. 242-256). Thus, substantial evidence

9

supports the ALJ's finding that Norman had a "less than marked" limitation in his ability to attend and complete tasks.

Because Norman does not have a marked limitation in two domains, he does not qualify for disability. Nor is there substantial evidence that Norman suffers an "extreme" limitation in any domain within the meaning of § 416.926a(e)(3)(I).

### C. Norman's Treating Psychiatrist

Lameka Brown argues that the ALJ failed to completely develop the record regarding Brown's potential psychological impairments. Specifically, Lameka Brown argues that the ALJ did not properly defer to True's opinions as the treating psychiatrist. The record does not support Lameka Brown's allegation. The ALJ delayed administrative hearings on Lameka Brown's application to obtain greater detail as to Norman's psychological history.

The ALJ properly gave greater weight to the medical expert and examining source opinions of Kaspar and Prestage, rather than to True's assessments. A treating physician's opinion does not automatically control because the record must be evaluated as a whole. *See Pirtle v. Astrue*, 479 F.3d 931, 933 (8th Cir. 2007). The fact that True assigned a GAF score of 41, indicating serious symptoms (Tr. 309), does not warrant rejecting the ALJ's findings. A GAF score is a snapshot of a person's functioning at a particular point in time, and is not a longitudinal indicator of the person's functioning. *Diagnostic & Statistical Manual of Mental Disorders-Text Revision* (*DSM-IV-TR*) (2000). Questionnaires completed by Plaintiff's teachers did not indicate severe limitations on Norman's functioning in the classroom. (Tr. 245-47, 249-50, 253-56). The July 9, 2004 Assessment signed by True

10

asserted that "Norman appears motivated to succeed academically and gets along well with his peers and teachers," that "Norman is able to make friends" and has "positive relationships," and is "creative and he plays well with his friends." (Tr. 309-310). "When a treating physician's opinions are inconsistent or contrary to evidence as a whole, they are entitled to less weight." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir. 2002).

The ALJ properly relied on Kaspar for the medical determinable impairments: ADHD, learning disorder, with probable borderline intellectual functioning, in conjunction with Prestage's examining source opinion. The ALJ noted that while Ms. Brown reported unusual behaviors, Prestage opined that this behavior was not unusual when put in the context of being interested in science and experiments. (Tr. 18). The ALJ noted that there were virtually no treatment notes by True, and that, while True suggested unusual behavior, this behavior was not placed in the context of Norman's academic interests. (Tr. 18). In addition, while True noted that Plaintiff's psychosis and thought disorder needed primary attention, he was not treating Plaintiff for any psychotic symptoms. *See Dolph v. Barnhart*, 308 F.3d 876, 878-79 (8th Cir. 2002). True's diagnosis of psychosis is an aberration in this record and was not entitled to any weight.

11

## II. Conclusion

Accordingly, it is hereby

ORDERED that Lameka Brown's petition [Doc. # 5] is DENIED. The decision of the ALJ is AFFIRMED.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: May 30, 2008
Jefferson City, Missouri